593 So.2d 465 (1992)
STATE of Louisiana, Applicant,
v.
Thomas WELLS, Respondent.
No. 23600-KW.
Court of Appeal of Louisiana, Second Circuit.
January 22, 1992.
Rehearing Denied February 21, 1992.
*466 William J. Guste, Jr., Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., Howard M. Fish and H.T. Cox, Asst. Dist. Attys., Shreveport, for applicant.
Mayer, Smith & Roberts, Shreveport by David T. Butterfield, for respondent.
Before MARVIN, SEXTON and NORRIS, JJ.
MARVIN, Chief Judge.
Having granted the state's application for a writ to review the trial court ruling upholding Wells's motion to suppress methamphetamine seized from a parked Ford van after a warrantless search, we reverse the trial court and render judgment overruling the motion to suppress and remanding for trial.
Probable cause to search the parked van without a warrant was not enervated by the fact that the police had the van and Wells under surveillance for almost two hours before staging an "accident" involving the van to cause Wells to appear and produce the title registration papers of the van. Wells's motion to suppress was directed, not at the registration papers of the van, or at his statements to police after the staged "accident," but at the methamphetamine found in the van.

FACTS
We adopt these facts found by the trial court:
On June 14, 1990, around 12:30 a.m., Kenny Weaver with Caddo-Bossier Narcotics Task Force received a tip from a confidential informant that ... Tommy Wells was in possession of a quantity of suspected methamphetamine. He was *467 told by this C.I. that the illegal substance was located in a brown Ford van with Arkansas license plates on it (C.I. also supplied the license plate number) and was parked in front of Pockets Arcade on Milam Street in close proximity to the Caddo Parish Courthouse. [Wells was not the registered owner of the van.] Weaver testified that this C.I. had given him reliable information in the past.
Acting on this tip, Agent Weaver contacted Agent Townley and both proceeded to the given location, arriving there around 1:15 a.m. Upon arrival, the two agents identified the brown Ford van with matching license plate parked in front of the pool hall exactly as the C.I. had described. After about forty-five minutes of surveillance of the vehicle, the two agents entered the pool hall. Therein, they were able to identify Tommy Wells playing pool. After a few minutes, the agents exited Pockets and resumed surveillance of the van. While the agents contemplated their next move,... Tommy Wells exited the pool hall, entered the van briefly, then immediately returned to the pool hall. The agents continued their surveillance of the van for an additional forty-five minutes. During this time they concocted a scheme whereby they would fabricate an automobile accident involving the suspect van in an attempt to lure Mr. Wells outside the pool hall. They decided to enlist the aid of Joe Morris, a sergeant with the Caddo Sheriff's Office, who was seen earlier entering the Courthouse.
The plan was to have a call placed to Pocket's Arcade asking that the owner of a brown Ford van go outside because the vehicle had been involved in an accident. The agents moved one of their undercover cars near the van to give the appearance of a collision with the van. Sgt. Morris parked his patrol car, with lights flashing, at the other end of the van. Mr. Wells appeared at the door of the pool hall, looked in the direction of the van, and returned inside. Sgt. Morris followed Wells inside; then, under the guise of needing to see his registration and insurance papers, Sgt. Morris lured Mr. Wells outside. After Wells retrieved his papers from the van, the agents identified themselves, revealing the fact they were acting on a tip that Mr. Wells had illegal drugs in the van. When Wells denied permission to search the van, he was handcuffed and a warrantless search of the van ensued. The search resulted in the discovery of a closed brown paper sack which, when opened, revealed a syringe loaded with methamphetamine, along with an additional 4 grams of methamphetamine all contained inside a plastic bag. At that point, the agents advised Mr. Wells they were placing him under arrest for Possession with Intent to Distribute [Methamphetamine].
We agree with the trial court's reasoning that the officers had probable cause to search the van and to arrest Wells without a warrant. We do not agree with the court's conclusions that there were no exigent circumstances other than the "accident."
While applauding the court's conclusion that the officers created the exigent circumstances in bad faith, Wells contends further that the officers did not have probable cause to search the van.
The state agrees that the officers had probable cause to search and urges, in effect, that exigent circumstances may be found when the thing to be searched is a motor vehicle.

PROBABLE CAUSE
Probable cause to search exists when the totality of the circumstances allows the conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular place. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
Probable cause to believe that a vehicle contains marijuana exists where a proven reliable informant, purporting to have first-hand knowledge, tells police that defendant will be transporting, in a particular truck, marijuana to sell to the CI at a particular place and time, and the police then observe the truck arrive at the place *468 and the time. State v. Hernandez, 408 So.2d 911 (La.1981), cert. denied, 459 U.S. 840, 103 S.Ct. 90, 74 L.Ed.2d 83.
Probable cause exists where a CI informs police that he had seen marijuana in the defendant's car within the preceding twenty-four hours, describing the car in detail as to model and license number, and the police find the defendant in the vehicle when and where the CI had told the police it would be. State v. Colvin, 358 So.2d 1250 (La.1978). Similar circumstances were found to constitute probable cause in State v. Cunningham, 412 So.2d 1329 (La. 1982), and in State v. Nieto, 395 So.2d 733 (La.1981).
Here, the CI was proved to have been reliable. The defendant and the van, with the license number and of the description given by the CI, were found by the officers when and where the CI said they would be. Under these circumstances, we conclude there was a fair probability that methamphetamine would be found in the van. Illinois v. Gates, supra.

EXIGENT CIRCUMSTANCES
In State v. Hernandez, discussed supra, the court noted:
[T]his court, for purposes of the "automobile exception" to the search warrant requirement, has not distinguished between a vehicle stopped while in motion and then searched (obviously, a vehicle must first be stopped before it is searched) and a vehicle parked in a public place accessible to persons who might either move it or remove evidence from the vehicle.
408 So.2d at 914.
Exigent circumstances were found to exist where evidence of a crime was located in an unlocked and unattended vehicle parked on a public road, accessible to anyone who might have had reason to move it or remove the evidence. State v. Green, 404 So.2d 977 (La.1981); State v. Lewis, 378 So.2d 396 (La.1979). See also State v. Redfearn, 441 So.2d 200 (La.1983). See discussion of cases where police continued surveillance for periods between four and 24 hours before searching a motor vehicle without a warrant in State v. Colvin, supra. Each case, of course, must rest on whether the particular circumstances can be labeled as exigent. The fact that the vehicle is parked when the police first discover it is not controlling. Obviously, a vehicle cannot be searched by police until it is parked or stopped. Hernandez, quoted supra. Obviously, probable cause to search is not negated simply because the vehicle is unattended. Green, Lewis, cited supra.
Moreover and as a practical matter, the mobility of a parked and unattended vehicle under surveillance by police who have probable cause to search and who know the driver of that vehicle is nearby and is under indirect surveillance, is nothing more than theoretical mobility. This is so, because, as is implied here, as soon as the driver "connects" himself with the vehicle for which there is probable cause to search, the police intend, not to let him drive away, but to detain him, search and find the contraband, and to arrest him because of his connection with the contraband, that intention to arrest the particular driver being the primary goal of the police when they began surveillance of the driver and the vehicle.
Recognition of theoretical distinctions in several Supreme Court cases in recent decades that evolved from warrantless searches of an automobile or containers therein is no longer necessary. Compare California v. Acevedo, ___ U.S. ___, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) with Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and its progeny. See Michigan v. Thomas, 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982). These cases are briefly discussed hereafter in historical context.
The Fourth Amendment and LSA-Const. Art. 1, § 5, prohibit unreasonable searches and seizures. A warrantless search is unreasonable unless the search can be justified by one of the narrowly drawn exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 *469 (1973); State v. Tatum, 466 So.2d 29 (La. 1985). The state bears the burden of proof. CCrP Art. 703(D); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).
The "automobile emergency exception" was first mentioned in Carroll v. United States, supra. There it was suggested that a warrantless search of an automobile may be justified by necessity arising out of the mobility and imminent possibility of disappearance of the vehicle. Two prerequisites were initially mentioned: probable cause to believe that the vehicle contained contraband or evidence of a crime, and exigent circumstances requiring an immediate search. California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), observed that the capacity to be "quickly moved" was clearly the basis of the holding in Carroll and its progeny which consistently spoke in terms of ready mobility of the motor vehicle. See Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).
Since Carroll, the courts have continued to wrestle with whether the hypothetical or theoretical mobility of a motor vehicle is sufficient to justify forgoing the warrant requirement, or whether the actual likelihood of mobility must be shown in the particular case to find exigent circumstances sufficient to justify the warrantless search.
In Carney, supra, the court stated,
[A]lthough ready mobility alone was perhaps the original justification for the vehicle exception, our later cases have made clear that ready mobility is not the only basis for the exception.
105 S.Ct. at 2069.
In Chambers v. Maroney, supra, the court held that when police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle even after the vehicle has been impounded and is in police custody. The justification to conduct a warrantless search does not vanish once the car is immobilized and under surveillance; nor does the validity of the search depend on a reviewing court's assessment of the likelihood in the particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant. Michigan v. Thomas, supra. In California v. Acevedo, supra, the court stated that it refined the exigency requirement in Chambers v. Maroney, supra, when it held that the existence of exigent circumstances is to be determined at the time the automobile is seized. The van in this case was effectively "seized" when the police began surveillance.
We emphasize the court's further explanation in Carney, supra:

When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposestemporary or otherwisethe two justifications for the vehicle exception come into play. First, the vehicle is obviously readily mobile by the turn of an ignition key, if not actually moving. Second, there is a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling. At least in these circumstances, the overriding societal interests in effective law enforcement justify an immediate search before the vehicle and its occupants become unavailable.
105 S.Ct. at 2070.
Carney indicates that the inherent or ready mobility of a motor vehicle creates a conclusive presumption of exigency. In Carney, a drug enforcement agent watched defendant approach a youth and accompany him to a motor home parked nearby which was apparently used by another person to exchange marijuana for sex. Several agents kept the motor home under surveillance. After the youth left the motor home, he told the agents that he had received marijuana in return for allowing defendant sexual favors. One of the agents then entered the motor home without *470 consent or a search warrant and observed marijuana, plastic bags, and a scale. Applying the automobile exception, the court held that the warrantless search of the motor home did not violate the Fourth Amendment because the drug enforcement agents had probable cause to enter and search the vehicle. The court did not discuss the Carroll exigent-circumstances requirement.
Similarly, in California v. Acevedo, supra, the most recent case discussing warrantless searches of motor vehicles, the court did not discuss specific exigent circumstances, again implying that the inherent mobility of a motor vehicle creates a conclusive presumption of exigency. Acevedo said:
The police may search an automobile and the container within it where they have probable cause to believe contraband or evidence is contained.
111 S.Ct. at 1991.
In State v. Kelly, 576 So.2d 111 (La.App. 2d Cir.1991), writ denied, we followed the traditional practice of paraphrasing the Carroll requisites, citing Chambers, without discussing some of the more recent cases of the U.S. Supreme Court. Kelly's car was pursued after an armed robbery and was then stopped and searched without a warrant. We held that search was justified either on the basis of probable cause or the automobile being "abandoned" after the driver exited the car and temporarily escaped from the police.
Here, we find probable cause and exigent circumstances to uphold the warrantless search in the light of the more recent federal jurisprudence cited and discussed above. On this record, the officers had probable cause under exigent circumstances to search the parked and unattended van when they first found it. The right of the officers to search the van for methamphetamine was not enervated because they kept the van directly, and Wells, indirectly, under surveillance for almost two hours before staging an "accident" to further "connect" Wells with the van and its contents. Like the trial court, we do not condone the fabrication of the officers. We note that the officers had observed the connection between Wells and the van when they saw him enter and depart from the parked van before they staged the accident. Under these circumstances, we find that the trial court erred in suppressing the methamphetamine found in the van. Chambers v. Maroney; California v. Carney; California v. Acevedo; State v. Hernandez, cited supra.

DECREE
The ruling of the trial court is reversed. The motion to suppress is overruled and the case is remanded for trial.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, NORRIS, LINDSAY and STEWART, JJ.
Rehearing denied.