7 So.3d 182 (2009)
STATE of Louisiana, Appellee
v.
Christopher O'NEAL, Appellant.
No. 44,067-KA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 2009.
Rehearing Denied April 30, 2009.
*184 Louisiana Appellate Project By Edward Kelly Bauman, Lake Charles, for Appellant.
Paul Joseph Carmouche, District Attorney, Tommy Jan Johnson, Dhu Thompson, Brady D. O'Callaghan, Assistant District Attorneys, for Appellee.
Before CARAWAY, DREW and MOORE, JJ.
DREW, J.
Christopher O'Neal was convicted of second degree murder and sentenced to life imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence. He appeals. We affirm.

FACTS
On May 13, 2006, the defendant shot and killed Carlos Johnson in the carport of Johnson's Queensborough area home in Shreveport. Johnson and his wife had just returned home from shopping. In June 2006, the defendant was indicted for second degree murder, and in November 2007, a jury returned a verdict of guilty.
On appeal, the defendant claims two trial errors:
 the denial of his motion to suppress the murder weapon and ski mask discovered in an allegedly illegal search of his car's trunk; and
 the admission of prejudicial hearsay testimony concerning the results of a gun residue test.

TESTIMONY
Because of the limited nature of the assignments of error, the testimony of primary importance is that of Corporal Josh Feliciano of the Shreveport Police Department who, along with SPD Corporal Robert Morman, stopped the defendant's vehicle shortly after the shooting, subsequently finding the weapon and ski mask. At the suppression hearing, Corporal Feliciano identified the defendant in open court, and further testified that:
 he came into contact with the defendant on May 13, 2006;
 he and Corporal Morman were in their vehicle in a parking lot at the intersection of Lakeshore and Hearne, a high crime area, at about 3:00 a.m.;
 the defendant's vehicle sped off an overpass, causing sparks to spray from the bottom of his vehicle as it hit the pavement at the bottom of the overpass;
 the officers pursued the vehicle and were able to stop it at the intersection of Hearne and Edgar;

*185  as Feliciano approached the vehicle, the defendant appeared to be concealing something under his leg;
 the defendant appeared to be very nervous;
 as the defendant produced his driver's license, Feliciano noticed the initials "RSC" on his hand, known to the officer as a gang tattoo for Rolling 60 Crips;
 the defendant denied having any weapons in his vehicle;
 Feliciano had the defendant step out and move to the front of the vehicle;
 when the defendant exited the vehicle, the officer observed a broken gun magazine on the seat;
 after patting down the defendant, Feliciano was able to see a weapon under the seat by lowering his head to the level of the steering wheel;
 when the officer recovered the weapon, the defendant claimed that the police had planted the gun on him and began to run; and
 the defendant was taken into custody two or three blocks away.
The stop was recorded on the dash camera of the officers' vehicle and was viewed by the trial court at the suppression hearing. The video indeed shows a great deal of movement by the defendant in the car prior to Corporal Feliciano's approach. The tape is entirely consistent with the officer's testimony.
The trial court denied suppression of the weapon and ski mask seized from the vehicle.
At trial, the court allowed testimony about the gun residue test, without objection. We affirm in all respects.

DISCUSSION

Motion to Suppress
The defendant argues that:
 neither probable cause nor exigent circumstances existed at the time the evidence was recovered;
 there was no justification for failing to secure a search warrant for the car;
 Corporal Feliciano's report is inconsistent as to when he observed the broken magazine;
 Corporal Feliciano's dash camera showed that he stopped three other males that night and conducted three warrantless searches of their vehicles;
 Corporal Feliciano's testimony (that as he approached the vehicle, the defendant was concealing something) was based upon the vehicle's rocking, but the video shows defendant was just getting his registration; and
 Officer safety was not a major concern because Corporal Feliciano was accompanied by Corporal Morman, who did not testify to seeing a weapon or a magazine in plain view from his side of the vehicle.
The state sees the proceedings differently, arguing that:
 the defendant does not contest the validity of the traffic stop;
 speeding is ample justification for a warrantless stop;
 the pat down was justified for safety reasons;
 on these facts, probable cause existed as well as exigent circumstances by which to justify the warrantless search; and
 the weapon was in plain view.
The right of every person to be secure in his person, house, papers, and effects against unreasonable searches and seizures is guaranteed by the Fourth *186 Amendment to the United States Constitution and Article I, § 5, of the 1974 Louisiana Constitution. It is well settled that a search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Thompson, XXXX-XXXX (La.4/9/03), 842 So.2d 330; State v. Ledford, 40,318 (La.App. 2d Cir.10/28/05), 914 So.2d 1168.
The purpose of limiting warrantless searches to certain recognized exceptions is to preserve the constitutional safeguards provided by a warrant, while accommodating the necessity of warrantless searches under special circumstances. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the state bears the burden of proving that the search and seizure were justified pursuant to one of the exceptions to the warrant requirement. La. C. Cr. P. art. 703(D); State v. Johnson, 32,384 (La.App. 2d Cir.9/22/99), 748 So.2d 31.
If a police officer observes a traffic infraction, the subsequent stop for that offense is clearly legal; the standard is a purely objective one that does not take into account the subjective beliefs or expectations of the detaining officer. This objective standard is indifferent to the relatively minor nature of a traffic violation. State v. Stoutes, 43,181 (La.App. 2d Cir.4/2/08), 980 So.2d 230. To assess the validity of an investigatory stop, the critical inquiry focuses on the officer's knowledge at the time of the stop. State v. Williams, 421 So.2d 874 (La.1982).
Public safety requires some flexibility for police to investigate and prevent crime. State v. Wesley, 28,012 (La.App. 2d Cir.4/3/96), 671 So.2d 1257. Police officers are justified in ordering the driver[1] as well as all passengers[2] out of vehicles, for officer safety. This may be inconvenient, but it is not a serious additional intrusion upon privacy interests. See State v. Landry, 588 So.2d 345 (La.1991).
The plain view doctrine is an exception to the warrant requirement. State v. Young, 39,546 (La.App. 2d Cir.03/02/05), 895 So.2d 753. The plain view doctrine renders a warrantless search reasonable: (1) if the police officer is lawfully in the place from which he views the object; (2) where the object's incriminating character is immediately apparent; and (3) the officer has a lawful right of access to the object. Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 2310, 110 L.Ed.2d 112 (1990); State v. Young, supra. Inadvertence is no longer required. See Horton, supra.
In State v. Archie, 477 So.2d 864 (La. App. 4th Cir.1985), officers stopped a car with a bent license plate. As the driver and passenger exited the vehicle, the passenger ducked down and placed something under the seat. One officer looked under the seat and found a loaded gun. The appellate court found that the search did not exceed the scope of the traffic stop, noting that the stop took place in a high-crime area,[3] that the defendant was seen trying to hide something under the seat, and that the officers were not obligated to *187 let him re-enter the car without checking to see what he had placed under the seat considering the possibility that they might be in danger. The court cited Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), in which the supreme court held that a search of the passenger compartment is permissible if limited to those areas in which a weapon may have been hidden, if the officer possesses a reasonable belief "based upon specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the officer to believe that the suspect is dangerous and the suspect may gain immediate control of weapons."
In State v. Wilder, 07-960 (La.App. 5th Cir.3/25/08), 983 So.2d 124, 127, writ denied, XXXX-XXXX (La.10/31/08), 994 So.2d 532, the defendant was stopped in a high crime area[4] for a traffic violation and was observed concealing something "within a type of compartment in which police officers tend to find secreted weapons." The officer testified that the purpose of his search was to uncover any firearms therein, and the search uncovered cocaine. The appellate court found that the state had presented evidence that the officer's protective search was reasonable under Long, supra, and found that the state had borne its burden of proving that exceptions to the warrant requirement existed. Given the facts and the great weight afforded a trial court's denial of a motion to suppress, the court found no error in the trial court's denial of suppression.
This was clearly a lawful traffic stop, and law enforcement officers are always justified in ordering the occupants out of a stopped vehicle. For officer safety, they need to see the hands of the occupants. See Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997); Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); and Landry, supra.
The broken gun magazine[5] was seen as the defendant exited the car. All these facts support both a frisk[6] of the passenger compartment, as well as a full probable cause search of the entirety of this vehicle, predicated upon:
 the high speed at which the defendant had been traveling;
 the defendant's nervous state;
 the presence of the previously hidden magazine;
 the nature of the high crime area where the stop occurred;
 the late hour of this traffic stop; and
 the gang tattoo on defendant's hand.
The alleged potential discrepancy as to when Corporal Feliciano discovered the broken magazine was addressed by the officer during cross-examination. He clarified that when he stated he later discovered the magazine, he was referring to after he saw the defendant attempt to conceal something under his leg; "later" referred to when the defendant exited the vehicle. Obviously, the trial court believed the officer's explanation of the events.
The defendant also argued that Corporal Feliciano's dash camera showed that he stopped three other males that night and conducted three warrantless searches of their vehicles. This is of no moment. Regardless of any other warrantless searches, the only search that matters in this case is the search conducted by Corporal Feliciano of the car driven recklessly *188 by this defendant, under the facts and circumstances of this stop.

Hearsay
Defendant objects to the admission of a portion of the testimony of Detective Shawn Hindenberger relative to the results of a gunshot residue test. Alternatively, he asserts that his trial counsel was ineffective for failing to make a contemporaneous objection in this regard.
Det. Hindenberger testified that he interviewed the defendant as part of his duties, that the defendant admitted ownership of the gun but denied firing it, and that the defendant submitted to a gunshot residue test. The defendant admits there was no contemporaneous objection when Det. Hindenberger further testified that there was a positive reading on the residue test, yet the defendant still denied firing the gun.
The defendant argues that:
 the swatch in the gunshot residue kit was removed and never recovered;
 the kit packaging, minus the swatch, was introduced into evidence over defense counsel's objection;
 the results of the test should not have been admitted because Hindenberger's testimony was inadmissible hearsay and violated the defendant's right of confrontation; and
 in the event this court finds that the issue is not preserved for appellate review because there was no contemporaneous objection, then trial counsel was ineffective because there could be no strategic reason for counsel not to have objected to the testimony.
The state argues that without a contemporaneous objection, the alleged error is not subject to appellate review.
Further, as to the question of ineffective assistance of counsel, nothing was presented to support or suggest a different outcome would have been had at trial, but for the admission of this testimony. The defendant failed to establish a reasonable probability of a different outcome.
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. C. Cr. P. art. 841; State v. Jones, 41,299 (La.App. 2d Cir.11/9/06), 942 So.2d 1215; State v. Smith, 39,698 (La.App. 2d Cir.6/29/05), 907 So.2d 192.
Generally, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief ("PCR") in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Ellis, 42,520 (La. App. 2d Cir.9/26/07), 966 So.2d 139. When the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,394 (La.App. 2d Cir.9/27/95), 661 So.2d 673.
Our law on ineffective assistance of counsel is well settled.[7]
*189 In State v. Boyer, 406 So.2d 143 (La. 1981), the Louisiana Supreme Court held that results of a neutron activation test, used to determine whether a person has recently fired a hand weapon, were not inadmissible hearsay since the test results did not assert anything by themselves and were meaningless without interpretation by the expert who was available for questioning.
In the first place, it is not at all clear to us that the offending testimony was hearsay. Hindenberger was testifying to a test procedure that he himself performed and to his observation of the result. The test did not require any expert knowledge to perform or to state that there was a "positive result" to the extent of an observable change.
Furthermore, Det. Hindenberger was present for cross-examination as to his performing the test, and he could have been examined about his knowledge, or lack thereof, as to the way the test worked, its accuracy, and any other relevant questions, and defendant's counsel could have called a witness as to shortcomings or other problems with such a test. On the other hand, defendant's counsel could have objected to Hindenberger's lack of expert qualifications to testify about the significance of the test results and the scientific basis for the test.
We find that counsel's performance was not ineffective because failure to exclude Hindenberger's testimony about gunshot residue cannot be said to have created a reasonable probability that the outcome of the trial would have been different. The defendant was stopped with the murder weapon shortly after the crime about a mile from the crime scene. His clothing matched the description of the assailant. He had been traveling at a high rate of speed and attempted to flee on foot once the gun was discovered in his vehicle. Guilty as sin.

Error Patent
The trial court did not advise the defendant at sentencing of the period within which to apply for post-conviction relief. Accordingly, the defendant is advised by this opinion, that except as otherwise provided in La. C. Cr. P. art 930.8, no application for post-conviction relief, including applications that seek an out-of-time appeal, *190 shall be considered if filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. art. 914 or 922.

CONCLUSION
The defendant's conviction and sentence are AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, CARAWAY, DREW, MOORE and LOLLEY, JJ.
Rehearing denied.
LOLLEY, J., would not consider a rehearing.
NOTES
[1] Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).
[2] Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).
[3] Raising the questions: Where are the low crime areas? Do any exist?
[4] Same questions.
[5] And arguably, the weapon itself.
[6] See Michigan v. Long, supra.
[7] The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

To establish that his attorney was ineffective, the defendant first must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. Strickland, supra. The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Tilmon, 38,003 (La.App. 2d Cir.04/14/04), 870 So.2d 607, writ denied, 2004-2011 (La. 12/17/04), 888 So.2d 866.
Second, the defendant must show that counsel's deficient performance prejudiced his defense. This element requires a showing the errors were so serious as to deprive the defendant of a fair trial, i.e., a trial whose result is reliable. Strickland, supra. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra; State v. Pratt, 26,862 (La.App. 2d Cir.4/5/95), 653 So.2d 174, writ denied, 95-1398 (La. 11/3/95), 662 So.2d 9. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. Strickland, supra; State v. Jordan, 35,643 (La. App. 2d Cir.4/3/02), 813 So.2d 1123, writ denied, XXXX-XXXX (La.5/30/03), 845 So.2d 1067.