873 So.2d 901 (2004)
STATE of Louisiana, Appellee
v.
Danny Ray BOUNDS, Appellant.
No. 38,330-KA.
Court of Appeal of Louisiana, Second Circuit.
May 12, 2004.
*903 Steven R. Thomas, Mansfield, for Appellant.
William R. Jones, District Attorney, for Appellee.
Before STEWART, GASKINS and DREW, JJ.
GASKINS, J.
Following a jury trial, the defendant, Danny Ray Bounds, was convicted on six counts of illegal possession of stolen things valued over $500.00, in violation of La. R.S. 14:69. The defendant's motion for new trial and alternative motion for postverdict judgment of acquittal were denied. The defendant was sentenced to six concurrent sentences of five years imprisonment at hard labor. On each count, four years were suspended, and the defendant was placed on five years supervised probation, with a special condition requiring restitution of $1,000.00. A fine totaling $3,000.00 was also imposed. The defendant's timely filed motion to reconsider sentence was denied.
The defendant now appeals. We affirm the defendant's convictions and sentences.

FACTS
In August 2001, an investigation of the defendant was commenced regarding his possession of stolen farm equipment at his residence and property in Red River Parish. In early September 2001, investigators for the Livestock Brand Commission with the Louisiana Department of Agriculture and Forestry and officers for the Red River Parish Sheriff's Department arrived at the defendant's property after seeing two tractors that matched descriptions of stolen tractors. The tractors were parked behind the defendant's house and were visible from the highway. The defendant was not home when the officers arrived so *904 they obtained permission to look around the property from the defendant's adult son. When the officers identified the two tractors as stolen items, the defendant's son telephoned the defendant to come home. Upon his arrival, the defendant was orally advised of his Miranda rights. The defendant told the investigators and officers that he didn't have anything to worry about because he bought the equipment. When asked if he could produce a bill of sale or canceled check, the defendant said he had canceled checks. The defendant told the investigators that he bought the tractors and equipment from Justin Carter. He voluntarily showed them his bank statements and checks.
The defendant was arrested for six counts of possession of stolen things valued over $500.00. At trial, the state presented evidence regarding the description (including serial numbers, except for the Rhino Flex Wing bush hog listed in the fourth count), original ownership, value, approximate date and place of theft, subsequent recovery and identification of the tractors and implements in question. The items and the details surrounding their loss are as follows:
Count 1: A John Deere 7210 tractor, stolen from Goldman Lawn and Tractor Company in Natchitoches in September 2000, having a retail value of $63,000.00, for which the defendant paid Justin Carter $12,000.00.
Count 2: A 4055 John Deere tractor, stolen from Robert Gorman in August 2000, which was purchased used (with 1600 hours) for $29,000.00, for which the defendant paid Carter $13,000.00. Count 3: A John Deere 720 front-end loader stolen from Robert Gorman in August 2000, which was purchased by Gorman for $5,667.00 and outfitted on the 4055 John Deere tractor listed in count number two, and included in the $13,000.00 price the defendant paid Carter for said tractor.
Count 4: A Rhino Flex Wing Bush Hog stolen from Scott Tractor Company in Bossier City on August 14, 2000, which retailed for $12,800.00, for which the defendant paid Carter $3,250.00.
Count 5: A Ford/New Holland 3930 tractor stolen from Shreveport Ford Tractor, belonging to Douglas Gaines, in September 2000, which was purchased by Gaines for $16,080.00, for which the defendant paid Carter $6,000.00.
Count 6: A Bush Hog front-end loader stolen from Shreveport Ford Tractor, belonging to Douglas Gaines, in September 2000, which was purchased by Gaines for $3,750.00, outfitted onto the Ford/New Holland 3930 tractor listed in count number five, and included in the $6,000.00 price the defendant paid Carter for said tractor.
The state also presented other information pertaining to specific items. Although it was unknown as to whether the power take out (PTO) on the John Deere 7210 tractor was operable when the tractor was stolen, it was inoperable when the tractor was returned to its owner. Testimony was given that, after an acquaintance told the defendant that the inoperable PTO would be covered under warranty, the defendant expressed reluctance about taking it to the dealer for repair. At the time of its theft, the John Deere 4055 tractor had visible damage on the hood as the result of a radiator boil-over; at the time of its recovery, it still bore this damage. Although *905 the serial number plate on the Rhino bush hog was missing when it was recovered, its owner identified it based on its type, configuration and "tips." He testified that this version was unique and the most expensive because of its special options; it was usually purchased by government agencies for cutting highway right-of-ways.
The defendant testified that he was not familiar with the value of tractors and farm equipment, and did not use such equipment in his job as a construction company supervisor. He stated that he did not know that the items found in his possession had been stolen. He explained that he bought them from Justin Carter. Carter, a young man in his early 20s, had cut hay for the defendant. According to the defendant, Carter said he was getting the equipment from a man who worked at Scott Truck and Tractor. The defendant presented various checks for his purchases, which contained notations on the memo line that he asserted were not made by him. Those notations indicated that items other than farm equipment were sold to the defendanti.e., hay, cows, etc. The defendant introduced his check register in which his notations on the respective check stubs indicated the correct references to purchases of farm equipment.
The defense presented other witnesses, including family members and Patricia Sullivan, the person who prepared the defendant's tax returns. Witnesses corroborated the fact that the defendant often made major "handshake" business deals. Sullivan related that the defendant told her which checks were for equipment purchases, and the farm equipment was listed on his federal tax returns. The defendant told her that he did not know why Carter wrote the incorrect notations on the checks. Sullivan stated that the notations did not look like the defendant's handwriting.
The jury convicted the defendant of all six counts. The defense filed a motion for new trial and, alternatively, motion for postverdict judgment of acquittal; the trial court denied the motions.
At a sentencing hearing, testimony was presented by the defendant, his adult children, and his employer. Also testifying was a private investigator who conducted a polygraph examination of the defendant indicating that he had no knowledge that the property was stolen, or the value of said property.
On each count, the trial court sentenced the defendant to serve five years imprisonment at hard labor, with four years suspended. Also, the defendant was placed on five years supervised probation, with the special condition regarding restitution of $1,000.00 to Mr. Gaines to reimburse him for his insurance deductible. A fine totaling $3,000.00 was also imposed. A timely motion to reconsider sentence was denied.

SUFFICIENCY OF EVIDENCE
The defendant contends that the trial court erred in denying his motion for new trial, and alternatively, motion for postverdict judgment of acquittal. According to the defendant, the state only proved that the stolen farm equipment was found on the defendant's property and failed to present any evidence that he had actual knowledge that these items were stolen.
The question of sufficiency of evidence is properly raised by a motion for postverdict judgment of acquittal. State v. Howard, 31,807 (La.App.2d Cir.8/18/99), 746 So.2d 49, writ denied, 1999-2960 (La.5/5/00), 760 So.2d 1190.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for *906 insufficiency of evidence is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 1998-2723 (La.2/5/99), 737 So.2d 747.
Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Lilly, 468 So.2d 1154 (La.1985); State v. Turner, 591 So.2d 391 (La.App. 2d Cir.1991), writ denied, 597 So.2d 1027 (La.1992).
The jury found the defendant guilty of six counts of illegal possession of stolen property valued at more than $500.00, a violation of La. R.S. 14:69. The elements of this offense are the following: (1) the items were stolen; (2) the items were worth more than $500.00; (3) the defendant knew or should have known that the property was stolen; and (4) the defendant intentionally received the property. See State v. Lampton, 1997-2616 (La.App. 4th Cir.3/10/99), 729 So.2d 754. Illegal possession of stolen property is a general intent crime. State v. Powell, XXXX-XXXX (La.App. 4th Cir.11/17/99), 746 So.2d 825.
Viewing the evidence in the light most favorable to the prosecution, all of the elements of the offense have been proved beyond a reasonable doubt. The state presented direct evidence that the six items of property listed in the indictment were stolen, the items of property were worth more than $500.00 and the defendant intentionally received those items. Clearly, testimony and documents introduced into evidence, when viewed in such light, support the conclusion that the defendant knew or should have known that the property was stolen.
There were several factors presented to the jury from which it could have reasonably found that the defendant knew that the pieces of farm equipment were stolen, most notably the manner in which they were purchased and the person who was selling them. The prices paid by the defendant to Carter were mere fractions of their market values. The seller was a young man with no apparent connection to the retail sale of farm machinery beyond a questionable assertion of a friend in retail sales; yet, he had access to a number of expensive implements, some of which were brand new. The inoperable PTO rendered one of the tractors of highly limited use to the defendant; however, he failed to have it repaired by the dealer even though he was advised that the tractor was still under warranty. Also, the jury could have believed that the notations on the checks were, in fact, made by the defendant, not Carter.
This assignment is therefore without merit.

*907 JUSTIN CARTER'S REFUSAL TO TESTIFY
The defendant contends that the trial court erred in not granting him a new trial due to the unexpected refusal of Justin Carter to testify at trial. According to the defendant's brief, the backbone of his defense was showing the jury the many internal inconsistencies in Carter's statement. As part of this strategy, the defense questioned the chief investigator for the Livestock Brand Commission about Carter's statement. As a joint motion, defense counsel offered the written statement into evidence. Defense counsel was prepared to rigorously cross-examine Carter; however, when called to the witness stand, Carter refused to testify and was held in contempt. The trial court then allowed the defense to withdraw Carter's statement from evidence. The court also admonished the jury to disregard it and any testimony about its content.
In his motion for new trial and alternatively for postverdict judgment of acquittal, the defendant asserted that Carter had indicated to the prosecutor before the trial that he would not testify. He argued that the state's failure to advise the defendant of this development amounted to a Brady violation. Also in his motion, the defendant referred to a statement by the alternate juror that it was apparent to the jury when Carter was on the stand that he "had been in a fight" and that "someone had gotten to him."
In its answer to the motion and the accompanying affidavits, the state asserted that when Carter met with the prosecutor several days before trial to discuss his testimony, he expressed reluctance to testify. However, after Carter spoke privately to his attorney by telephone, he said he would complete his interview with the prosecutor and testify. In his affidavit, the prosecutor stated that he "fully expected Mr. Carter to testify pursuant to his subpoena when he was called to the witness stand."
Review of the record reveals that after Carter refused to testify, the defendant's motion to remove Carter's statement because of hearsay was granted, and an admonition to the jury was made by the trial court at the defendant's request. The defendant chose to not move for mistrial. Since the defendant received all of the relief he requested on this matter at trial, we cannot say that the trial court abused its sound discretion in denying the defendant's motion for new trial. State v. Johnson, 34,902 (La.App.2d Cir.9/26/01), 796 So.2d 201.
This assignment is without merit.

EXCESSIVE SENTENCES
In three assignments of error, the 55-year-old defendant complains of his sentences, specifically the imposition of a one-year term of incarceration. The defendant argues that the trial court did not accurately and sufficiently set forth the aggravating and mitigating factors in compliance with La. C. Cr. P. art. 894.1. The defendant concludes that the objective facts in this case do not support incarceration, and asserts that his sentences totally disregard traditional sentencing in the 39th Judicial District Court and other districts, in which first offenders in property-related crimes have received probation. He contends that requiring him to serve one year in prison will have "catastrophic effects" on him and his family. In particular, he cites the financial loss to his family and his business, as well as his own poor health.
La. R.S. 14:69B(1) provides that whoever commits the crime of illegal possession of stolen things, when the value of the things is $500.00 or more, shall be imprisoned, with or without hard labor, for not *908 more than ten years, or may be fined not more than $3,000.00, or both.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, 394, writ denied, XXXX-XXXX (La.2/2/01), 783 So.2d 385; State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979. The record adequately indicates that the trial court was aware of the matters urged by the defense prior to imposing sentence, i.e., the defendant's personal history, his first offender status and the hardship that a term of imprisonment would cause to the defendant and his family.
The second prong of the test of whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
There is no proportionality guarantee in noncapital cases unless the reviewing court finds the sentence is grossly disproportionate to the circumstances of the offense. See Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), in which the Court ruled "the Eighth Amendment contains no proportionality guarantee." Accord State v. Delaughter, 29,974 (La.App.2d Cir.12/10/97), 703 So.2d 1364, writ denied, XXXX-XXXX (La.5/1/98), 805 So.2d 201; State v. Callahan, 690 So.2d at 865, fn. 2; State v. King, 37,615 (La.App.2d Cir.10/9/03), 856 So.2d 243.
A trial court is not required to render a suspended sentence or probation on a first (or qualifying second) felony offense. The judge may consider whatever factors and evidence he deems important to a determination of the best interest of the public and the defendant. State v. Bradford, supra; State v. Callahan, supra; State v. Frye, 37,009 (La.App.2d Cir.5/14/03) 847 So.2d 151, writ denied, XXXX-XXXX (La.1/9/04), 862 So.2d 979.
*909 The record shows that the defendant's sentences were well below the maximum sentences that could have been imposed. When the defendant's crimes and punishment are viewed in light of the harm done to society by such major economic crimes, the defendant's sentences do not shock the sense of justice. The defendant's proportionality argument is likewise without merit. Furthermore, the trial court was not required to render a suspended sentence or probation on a first felony offense.
These assignments are without merit.

CONCLUSION
The defendant's convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.