914 So.2d 1117 (2005)
STATE of Louisiana, Appellee
v.
Jesse James WILEY a/k/a Jessie James Wiley, Appellant.
No. 40,289-KA.
Court of Appeal of Louisiana, Second Circuit.
October 26, 2005.
*1119 Louisiana Appellate Project, by Peggy J. Sullivan, Monroe, for Appellant.
James D. (Buddy) Caldwell, District Attorney, James E. Paxton, Assistant District Attorney, for Appellee.
Before BROWN, GASKINS and MOORE, JJ.
MOORE, J.
Jessie James Wiley[1] was charged by bill of information with possession of crack cocaine with the intent to distribute, a violation of La. R.S. 40:967 A(1). A jury found him guilty as charged and the district court sentenced him to 20 years at hard labor, the first two without benefits. Wiley now appeals, urging the evidence was insufficient to convict and the sentence is excessive. We affirm.

Factual Background
On May 7, 2002, Deputy John Mathews of the Tensas Parish Sheriff's Office received a cell phone call from a confidential informant advising that Wiley had just sold crack to a man named James Arnold at James's house on Fourth Street in St. Joseph. The informant also described the car, a brown and white Lincoln Town Car, that Wiley had driven and parked outside the house. Dep. Mathews testified that this informant had been responsible for at least 10 felony arrests. Dep. Mathews cruised by the house and saw the Lincoln parked in front; he radioed the tag number to Deputy Rob Rushing, who confirmed the car was registered to Wiley's mother. Moments later Dep. Mathews saw two black men get into the car and drive off. Dep. Mathews radioed Dep. Rushing to assist him in stopping the Lincoln.
*1120 Deputy Rushing met the Lincoln at the corner of Fourth and Hancock Streets. He recognized Wiley, who was driving, and Melvin Williams, the passenger. The Lincoln sped off without stopping and Dep. Rushing started to pursue it toward Waterproof. However, the informant called again, saying that Wiley was headed toward Hwy. 65. Maintaining radio contact, both deputies coordinated to stop the fleeing Lincoln.
Deputy Rushing pulled in front of the Lincoln at the corner of Ice House Road and Hwy. 65; both vehicles stopped. Dep. Rushing was about to order the occupants out of the car when he saw a small object tossed out the passenger window; the Lincoln then immediately sped north on Hwy. 65. Dep. Rushing rode over and picked up the object, a pill bottle apparently containing crack cocaine. He then resumed the chase.
After a fast U-turn, Dep. Rushing again stopped the Lincoln on the southbound shoulder of Hwy. 65 and ordered the driver out. Wiley opened the door and stepped out, carrying an infant in his arms. Dep. Rushing told him to place the baby in the car, but Wiley cursed and refused, shouting only that he was going to his mother's house. Wiley then got back in the car and sped off again. Dep. Rushing radioed Dep. Mathews that there was an unrestrained baby in the Lincoln, and they called off the high-speed chase. A short while later, Dep. Mathews located the Lincoln, abandoned in tall grass off an oilfield road.
Deputies did not apprehend Wiley that day, but based on the informant's confirmed tips and the fact that Dep. Rushing recognized Wiley as the driver, they swore out an affidavit charging him with possession of crack cocaine with the intent to distribute.
At trial, James Arnold confirmed that on May 7, 2002, Wiley came to his house in St. Joseph and sold him 15 rocks of crack for $200 in two crisp new $100 bills. He testified that he and Wiley had just completed the deal in a back bedroom, where Melvin Williams was also present, when his brother George Arnold burst in to say the police were riding up and down the street. According to James, Wiley put the pill bottle back in his pocket and left with Melvin and the baby; they got in the Lincoln and drove off. James was not charged in connection with this incident.
Melvin Williams testified that Wiley drove him to James's house that afternoon; several people were smoking crack there. He confirmed that he, Wiley and James went into the back bedroom, where Wiley sold James some crack for $200 in $100 bills.[2] After the sale, Wiley still had several rocks left in a pill bottle in his front pocket. As soon as they heard the police "were riding," Melvin and Wiley  carrying the baby  left in the Lincoln. At some point, Wiley handed him the pill bottle; when Dep. Rushing stopped them the first time, Wiley told him (Melvin) to toss it out the window, and he did so. Melvin further described the chase down country roads, including the second stop, when Wiley got out of the car with the baby. Finally they parked the car near an old oil pump and fled on foot. Melvin admitted that for his part in this offense, he pled guilty to possession of crack and promised to testify truthfully against Wiley. In exchange, he received a suspended sentence of three years with three years' probation, which was later revoked.
*1121 Susan Rutledge, a forensic chemist from the North Louisiana Crime Lab, testified that the pill bottle contained 19 to 21 pieces and crumbs of crack cocaine weighing 3.52 grams. Sheriff Ricky Jones testified that somebody with that much cocaine must be dealing it, not merely using it. Ms. Rutledge admitted there was no request to analyze the bottle for fingerprints. Dep. Rushing testified that because of the exigency of the chase, he did not put on gloves before picking up the bottle from the roadside. He also felt fingerprinting was unnecessary, as he knew both the occupants of the Lincoln.
Wiley proceeded to a jury trial in October 2003. By a vote of 10-2, the jury found him guilty as charged of possession of crack cocaine with the intent to distribute. Wiley filed a motion for new trial which was denied after a hearing in December 2003. The district court sentenced him to 20 years at hard labor, the first two without benefit of probation, parole or suspension of sentence. This appeal ensued.

Discussion: Sufficiency of the Evidence
By his first assignment of error, Wiley urges the evidence adduced at trial does not support the conviction of possession of crack cocaine with the intent to distribute. He contends that Dep. Rushing saw Melvin Williams, not the defendant, toss the drugs out the window, and that the only two people who put the drugs in Wiley's hands were Melvin Williams and James Arnold, both of whom "had compelling reasons to put this off on Wiley." Specifically, James bought as much cocaine as Melvin later tossed out the car but was never charged with any offense, and Melvin actually pitched the drugs yet was allowed to plead guilty for a light sentence. He also argues that Dep. Rushing's explanation for not properly seizing the pill bottle to preserve latent fingerprints was unreasonable and destroyed the chance to prove that Wiley had never handled it.
The state submits that Deputies Rushing and Mathews confirmed every essential detail of the informant's phone calls, as did Wiley's own associates in crime, James Arnold and Melvin Williams. In particular, James admitted buying drugs from Wiley. The state concludes that the jury could reasonably accept the consistent testimony of these witnesses and find Wiley guilty of every essential element of the crime.
When issues are raised on appeal both as to the sufficiency of the evidence and one or more trial errors, the reviewing court first reviews the sufficiency claim. This is because the defendant may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if the evidence is constitutionally insufficient. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2 Cir. 4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. In any review of sufficiency, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307 at 319, 99 S.Ct. 2781 at 2789, 61 L.Ed.2d 560 (1979). The Jackson standard applies both to direct and circumstantial evidence. State v. Marcantel, XXXX-XXXX (La.4/3/02), 815 So.2d 50; State v. Updite, 38,423 (La.App. 2 Cir. 6/23/04), 877 So.2d 216, writ denied, XXXX-XXXX (La.11/24/04), 888 So.2d 229.
The task of the appellate court in reviewing a sufficiency claim is not to second-guess the credibility choices of the trier of fact beyond the standard prescribed by Jackson v. Virginia. State v. Davis, XXXX-XXXX (La.6/27/03), 848 So.2d *1122 557. The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Silman, 95-0154 (La.11/27/95, 663 So.2d 27); State v. Gilliam, 36,118 (La.App. 2 Cir. 8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
The crime of possession of crack cocaine with the intent to distribute requires proof that the defendant knowingly and intentionally possessed the drug and did so with the specific intent to distribute it. La. R.S. 40:967 A(1); State v. Franklin, 31,068 (La.App. 2 Cir. 9/23/98), 719 So.2d 578, writ denied, 98-2982 (La.3/19/99), 739 So.2d 781. Intent is a question of fact to be decided by the trier of fact; it need not be proven as fact, but may be inferred from the circumstances. Id. Circumstantial evidence from which the intent to distribute may be inferred includes the quantity of the substance, equipment and supplies found with it, where it was found, manner of the packaging, and the testimony of experts knowledgeable in the field. State v. House, 325 So.2d 222 (La.1975).
Deputy Mathews testified that a confidential informant called to say that Wiley had just sold crack to James Arnold. The tip included Wiley's location and a description of the car he was driving, all confirmed by Dep. Mathews. A second tip from the same informant correctly advised which way Wiley was driving. Based on this information, Deputy Rushing stopped the car and saw someone throw a pill bottle out the window.
James Arnold admitted that Wiley sold him 15 rocks of crack from a pill bottle for $200. Melvin Williams corroborated all these details, in addition to the facts of the chase during which Wiley handed him the pill bottle and instructed him to throw it out the car. James openly admitted that he was not charged; Melvin admitted that he received a favorable plea bargain, but his probation was revoked because he failed a drug test; both admitted smoking crack on the day of this crime. In short, these witnesses had diminished credibility, but on the essential facts they corroborated the content of the informant's tips and the personal observations of the deputies. On this record, the jury did not abuse its discretion in accepting their direct testimony that Wiley sold crack to James.[3] Given the strength of this evidence, it is of no moment that Dep. Rushing did not take every precaution to preserve any possible latent fingerprints on the pill bottle.
Finally, Ms. Rutledge testified that the pill bottle contained 19 to 21 rocks of crack, an amount which Sheriff Jones testified without objection was indicative of selling.
A rational jury could have found, beyond a reasonable doubt, that Wiley possessed crack cocaine with the intent to distribute. The evidence is thus sufficient to convict Wiley as charged. This assignment of error lacks merit.

Excessive Sentence
By his second assignment of error, Wiley urges the 20-year sentence was excessive *1123 under the facts and circumstances of the case. He contends the court placed undue emphasis on his numerous prior arrests for drug-related offenses, only one of which resulted in a conviction. He also argues the court gave inadequate weight to his family obligations (he had a young son with him at the time of the offense and his wife was pregnant at the time of trial), and his reputation for farming over 1,100 acres in Tensas Parish (trial testimony showed that just hours before this offense, he borrowed $4,000 from James Arnold to buy farm supplies). He also suggests that his conduct was no worse than that of James, who admitted buying 15 rocks of crack, enough to make him a dealer, too.
The state submits that the court fully considered the guidelines of La. C. Cr. P. art. 894.1 and imposed a sentence commensurate with the offense and the offender.
When a defendant files no motion to reconsider sentence pursuant to La. C. Cr. P. art. 881.1, the appellate court's review is limited to the bare claim that the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993); State v. English, 34,164 (La.App. 2 Cir. 12/20/00), 774 So.2d 1186, writ denied, XXXX-XXXX (La.10/12/01), 799 So.2d 499. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La. 1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bounds, 38,330 (La.App. 2 Cir. 5/12/04), 873 So.2d 901.
The sentencing range for possession of cocaine with the intent to distribute is imprisonment at hard labor for not less than two years nor more than 30 years, the first two years of the sentence being without benefit of parole, probation or suspension of sentence. La. R.S. 40:967 B(4)(b).
The instant offense was by no means Wiley's first time to stumble on the jagged rocks of crack cocaine. The court cited his 1994 conviction for possession of cocaine, pled down from possession with intent to distribute; on that occasion, he drew three years at hard labor. In addition, he had several charges of distribution that had been dismissed, three counts that had apparently prescribed, and seven counts that were still pending. The court aptly observed that at age 49, Wiley was not a youthful offender. The court could reasonably find that Wiley was a long-term dealer in need of serious correctional treatment. In addition to the several factors noted by the trial judge at sentencing, it should also be noted that Wiley flagrantly endangered his 1½-year-old son in a protracted car chase through Tensas Parish. On this record, the sentence is tailored to the offense and the offender and does not shock our sense of justice.

Conclusion
Finally, we have reviewed the entire record and find nothing we consider to be error patent. La. C. Cr. P. art. 920(2). For the reasons expressed, Wiley's designated assignments of error lack merit. The conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Wiley's first name is printed on the bill of information and case caption as "Jesse" but in several pro se pleadings he spelled it "Jessie."
[2] Melvin initially testified the deal was for 12 rocks of crack but he later admitted it may have been 15.
[3] At the hearing on the motion for new trial, Wiley argued that Melvin and James were both "compensated" for their testimony against him. However, every witness denied that any compensation was paid or promised, as well as that any pressure was exerted on them to influence their testimony.