STEWART, J.
 

 | |The defendant, Kenny Wayne Collins, was convicted by a jury of unauthorized entry of an inhabited dwelling, attempted sexual battery, and attempted possession of marijuana with intent to distribute. He was sentenced to three years at hard labor for the unauthorized entry conviction; four years at hard labor without benefit of probation, parole or suspension for the attempted sexual battery conviction; and ten years at hard labor, with credit for time served, the first four years without benefit of probation, parole, or suspension of sentence, the remaining six suspended, with five years’ supervised probation, for the attempted possession of marijuana with intent to distribute conviction. The sentences are to run concurrently with each other, but consecutively to any other sentences. The defendant now appeals, urging five assignments of error. For the following reasons, we affirm the defendant’s convictions and sentences, but amend the defendant’s sentence for attempted possession with intent to distribute to remove the prohibition of parole.
 

 FACTS
 

 On November 8, 2006, J.G.
 
 [1]
 
 was standing outside her apartment smoking a cigarette with Justin Flores, her boyfriend’s brother, and the defendant. The trio stood and talked for a few minutes before J.G. announced that she was going back into the apartment that she shared with her boyfriend, Joshua Flores, and Justin Flores, so that she could take a shower. She asked Justin to lock her in the apartment. J.G., Joshua, and Justin all lived together and had only one key to the apartment. After Justin |2did so, he and the defendant went to the defendant’s apartment two doors down to play video games.
 

 The defendant shared an apartment with his then seven-months pregnant girlfriend, Whitney Farris. Farris left shortly after the two arrived. Soon after, the defendant told Justin he had to leave for a few minutes.
 

 After J.G. got out of the shower, she walked into her bedroom wearing only a towel and began to dry off when she looked in the mirror and saw the defendant standing in the corner. J.G. screamed and told him to get out of her apartment. The defendant left the room and J.G. ran into her walk-in closet to put on some clothing. She put on a t-shirt and a pair of jogging pants and when she looked up again, the defendant was in her closet with her and was attempting to hug her. As he did so, he shoved his hand down the front of her jogging pants and touched her vagina. J.G. screamed again
 
 *1074
 
 and managed to get away from him. She ran out of the apartment to find Justin and call the police. The defendant did not have his own key to the apartment, nor did anyone have permission to be in the apartment alone with J.G.
 

 Deputy John Dupree, upon arriving at the scene, first spoke with the victim inside her apartment where he found her curled up on her couch, crying. He then left the victim’s apartment and was approached by Collins. Dupree
 
 Mirandized
 
 Collins and then explained to him the nature of the investigation. Dupree testified that the defendant told him that he did not have permission to be in the apartment stating, “He knew not to be in there alone with her.”
 

 | ¡¡Whitney Farris arrived home and noticed the law enforcement vehicles centered around their apartment building. She went into her apartment and told the defendant that there were police outside and that he stood up abruptly and left the apartment. Shortly thereafter, Farris attempted to take J.G. her mail, but was stopped at J.G.’s front door by a law enforcement officer. She returned to her apartment, where she was approached several minutes later by another officer who explained the situation and asked for consent to search the apartment. Farris voluntarily gave her consent.
 

 During the search, officers discovered three sandwich-type bags of marijuana, a digital scale, a manual scale, and small “baggies” typically used to separate a large quantity of marijuana into smaller quantities for resale. Detective Mark Johnson was accepted by the trial court as an expert in the field of “packaging and distribution of marijuana.” Johnson testified that the marijuana was packaged into different size bundles to please a variety of buyers and that scales were usually found in cases of distribution because sellers wanted to make sure that they were not being ripped off by others. Johnson testified that it was his opinion that there was an intent to distribute indicated by the amount of marijuana and other evidence found in the apartment.
 

 After searching the apartment, officers asked the defendant about the drugs found in the apartment. According Deputy John Dupree, the defendant stated that he had bought the drugs that same night from a guy out of town and that he had paid four hundred dollars ($400.00) for it.
 

 |4The jury returned three responsive verdicts of guilty to: attempted sexual battery, unauthorized entry of an inhabited dwelling, and attempted possession of marijuana with intent to distribute. The defendant was sentenced to four years at hard labor without benefit of probation, parole or suspension for the attempted sexual battery conviction; three years at hard labor for the unauthorized entry conviction; and ten years at hard labor, the first four years without benefits, the remaining six years suspended, with five years’ supervised probation for the attempted possession with intent to distribute conviction.
 

 The defendant now appeals.
 

 LAW AND DISCUSSION
 

 Assignment of Error Number 1: Sufficiency of the Evidence
 

 The defendant asserts five assignments of error in this appeal. In his first assignment of error, the defendant challenges the sufficiency of the evidence. More specifically, the defendant argues that the state failed to prove that he committed the crime of unauthorized entry of an inhabited dwelling, because the state failed to prove that he did not have permission to enter the apartment and failed to show any forced entry into the apartment. The
 
 *1075
 
 defendant implies that either Flores or the victim gave him a key. The defendant also argues that the state failed to prove that he committed the crime of attempted sexual battery. Noting that he left the room when asked to do so and then returned after the victim was dressed, the defendant argues the state failed to prove that the defendant did not have consent to touch the l5victim. Finally, the defendant argues that the state failed to prove the requisite intent for attempted possession with intent to distribute.
 

 When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under
 
 Hudson v. Louisiana,
 
 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt.
 
 State v. Hearold,
 
 603 So.2d 731 (La.1992);
 
 State v. Bosley,
 
 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347,
 
 writ denied,
 
 97-1203 (La.10/17/97), 701 So.2d 1333.
 

 Under the
 
 Jackson v. Virginia
 
 standard, we review the record in the light most favorable to the prosecution to determine whether the evidence was sufficient to convince any rational trier of fact that all the essential elements of the crime had been proven beyond a reasonable doubt.
 
 Jackson v. Virginia, supra; State v. Bosley, supra; State v. Tate,
 
 2001-1658 (La.5/20/03), 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Robertson,
 
 96-1048 (La.10/4/96),680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Gilliam,
 
 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508,
 
 writ denied,
 
 2002-3090 (La.11/14/03), 858 So.2d 422.
 

 Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency.
 
 State v. Allen,
 
 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622,
 
 writs denied,
 
 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255,
 
 cert. denied,
 
 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
 

 In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Wiltcher,
 
 41,981 (La.App. 2d Cir.5/9/07), 956 So.2d 769;
 
 State v. Burd,
 
 40,480 (La.App. 2d Cir.1/27/06), 921 So.2d 219,
 
 writ denied,
 
 2006-1083 (La.11/9/06), 941 So.2d 35. The fact finder is charged with making a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law.
 
 State v. Casey,
 
 99-0023 (La.1/26/00), 775 So.2d 1022,
 
 cert. denied,
 
 
 *1076
 
 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
 

 |7La. R.S. 14:27 states: “Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.”
 

 The defendant argues that the state failed to prove that he did not have permission to be in the victim’s home. La. R.S. 14:62.3 defines unauthorized entry of an inhabited dwelling as:
 

 The intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person.
 

 The evidence shows that the defendant entered the home of the victim and stood in her bedroom waiting for her to finish her shower. The victim testified that the defendant did not have permission to be in her home and that she asked Justin Flores to lock her inside because she was going to take a shower. No evidence suggested that the defendant had permission to be in the home. The defendant argues that Justin Flores could have given the defendant permission to be in the home. However, when Justin Flores testified, he made no statement that suggested that he gave the defendant permission to be in the apartment. Viewing the evidence presented in the light most favorable to the prosecution, we affirm the conviction for unauthorized entry.
 

 La. R.S. 14:43.1 defines “sexual battery” as:
 

 The intentional engaging in any one of the following acts with another person where the offender acts without the consent of the victim ... (1) The touching of the anus or genitals of the | ¿victim by the offender using any instrumentality or any part of the body of the offender
 

 [[Image here]]
 

 The defendant argues that the state failed to prove that the defendant did not have consent to touch the victim. The defendant left the room when the victim yelled at him to get out and then returning once she was in her closet. The victim testified that the defendant did not have permission to be in her home and that when she saw the defendant, she yelled for him to leave the apartment and thought he had. When she then went into her closet to put on clothes, he reappeared in her closet and began to touch her. The victim testified that she continued to yell at him to leave and then wrenched herself from his grasp and fled the apartment. The defendant’s statements to the investigating officers indicated circumstances that were very similar to those explained by the victim.
 

 When there is conflicting testimony, it is up to the trier of fact to make a determination of credibility and such a determination should not be overturned on appeal save to protect fundamental due process. This court will not alter a reasonable credibility determination made by the trier of fact. The attempted sexual battery conviction is affirmed.
 

 Finally, the defendant argues that the state failed to prove that he had the requisite intent required to support the attempted possession with intent to distribute conviction. La. R.S. 40:966(A) establishes that:
 

 “It shall be unlawful for any person knowingly or intentionally: (1) To produce, manufacture, distribute or dispense or possess with intent to produce, manufacture, distribute, or dispense, a
 
 *1077
 
 controlled dangerous substance analogue classified in Schedule I ...”
 

 19Intent is a question of fact to be decided by the trier of fact; it need not be proven as fact, but may be inferred from the circumstances.
 
 State v. Wiley,
 
 40,289 (La.App. 2 Cir. 10/26/05), 914 So.2d 1117. Circumstantial evidence from which the intent to distribute may be inferred includes the quantity of the substance, equipment, and supplies found with it, where it was found, manner of the packaging, and the testimony of experts knowledgeable in the field.
 
 State v. House,
 
 325 So.2d 222 (La.1975).
 

 The state presented evidence that marijuana was found in the defendant’s home packaged in a manner consistent with distribution, along with scales and “baggies,” which are commonly used to measure and package marijuana for distribution. As cited above, intent is a question of fact. Here, the trier of fact made a determination based on the testimony of the officers who had searched the defendant’s apartment as well as Detective Johnson’s expertise in the field of narcotics to make a determination that, under the circumstances, the defendant had the requisite intent. The evidence is sufficient to support such a finding.
 

 This assignment is therefore without merit.
 

 Assignment of Error Number 2: Motion to Suppress
 

 In the defendant’s second assignment of error, he asserts that the trial court erred in denying his motion to suppress the marijuana seized from his apartment. He contends that the motion to suppress was erroneously denied because the law enforcement officers should have asked his permission to search the apartment after obtaining consent from the defendant’s co-tenant.
 

 | lflPursuant to La. C. Cr. P. art. 703(D), the state bears the burden of proof when a defendant files a motion to suppress evidence obtained without a warrant:
 

 D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.
 

 Therefore, the state bears the burden of showing that probable cause and exigent circumstances justified a warrantless search and seizure.
 
 State v. Hemphill,
 
 41,526 (La.App. 2d Cir.11/17/06), 942 So.2d 1263, 1271,
 
 writ denied,
 
 2006-2976 (La.3/9/07), 949 So.2d 441.
 

 The entire record, including the testimony at trial, is reviewable for determining the correctness of a ruling on a pretrial motion to suppress.
 
 State v. Young,
 
 39,546 (La.App. 2d Cir.03/02/05), 895 So.2d 753. Our review is not confined to the transcript of the hearing on a motion to suppress.
 
 State v. Young, supra.
 

 This court reviews the district court’s ruling, on a motion to suppress under the manifest error standard in regard to factual determinations, as well as credibility and weight determinations, while applying a
 
 de novo
 
 review to findings of law.
 
 State v. Hemphill, supra.
 

 In
 
 United States v. Matlock,
 
 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the United States Supreme Court considered the validity of a warrantless search of a home when consent to search was given, not by the defendant, but by a co-occupant of the home. The facts were that the defendant was arrested in his front yard and taken to a waiting police car. In The officers then asked the woman who lived in
 
 *1078
 
 the home with the defendant for consent to search, and she granted it. In that case, the Court held that such a consent is valid, and the evidence discovered admissible at the defendant’s trial.
 

 Georgia v. Randolph,
 
 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006), a more recent case, also considered the validity of a co-occupant’s consent to search, but had a slightly different holding. In that case, the United States Supreme Court once again affirmed the validity of a warrantless search with consent of a co-oecupant; however, the Court stated that one occupant’s consent could not trump the refusal of another occupant. In the instant case, law enforcement officers were leaving the apartment of the victim when they were approached by the defendant. He gave a statement impheating himself in the criminal activity that had been reported by the victim and was placed under arrest. The officers then placed him in a vehicle and went to his apartment to question his girlfriend, Whitney Farris, who lived there with him. Farris gave the officers consent to search the apartment. While searching it, they located marijuana and paraphernalia indicative of distribution.
 

 The evidence presented did not indicate that the officers removed the defendant from his home in an attempt to prevent him from objecting to a search, or that they purposefully avoided seeking his permission by ignoring any objection by him. Rather, they proceeded with the investigation by questioning potential witnesses, including Farris. In the process of questioning Farris, the officer obtained her consent to search the apartment |i2she shared with the defendant. Her consent was valid. The record does not show that the officers obtained Farris’s consent after a refusal by the defendant. The officers placed the defendant under arrest for the crimes they already knew he committed and continued their investigation while the defendant was located in one of their vehicles. For these reasons, we find no error in the trial court’s denial of the motion to suppress.
 

 Assignment of Error Number 3: Jury Challenge
 

 In the third assignment of error, the defendant argues that the trial court erred in denying his
 
 Batson
 
 challenge regarding the exclusion of jurors based upon race. He asserts that the race-neutral reasons for the peremptory challenges of two black jurors from the first panel were not sufficient to satisfy the requirements of
 
 Batson
 
 and that the dismissal of those jurors was discriminatory.
 

 It is well settled that the use of peremptory challenges based solely on a juror’s race is prohibited.
 
 Batson v. Kentucky,
 
 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The
 
 Batson
 
 decision is codified in our law in La. C. Cr. P. art. 795.
 

 In
 
 State v. Draughn,
 
 2005-1825 (La.1/17/07), 950 So.2d 583, the proper reviewing process for a
 
 Batson
 
 claim is set forth as follows:
 

 A defendant’s
 
 Batson
 
 challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Although the prosecutor must present a comprehensible reason, “[t]he second step of this process does not demand an explanation that is persuasive, or even plausible”; so long as the reason is not |^inherently discriminatory, it suffices. Third, the court must
 
 *1079
 
 then determine whether the defendant has carried his burden of proving purposeful discrimination. This final step involves evaluating “the persuasiveness of the justification” proffered by the prosecutor, but “the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.” (citations omitted.)
 

 Since the trial judge’s findings in the context under consideration here largely turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference.
 
 Hernandez v. New York,
 
 500 U.S. 352, 364, 111 S.Ct. 1859, 1868, 114 L.Ed.2d 395 (1991).
 

 During voir dire, the defendant raised a
 
 Batson
 
 challenge after the state peremptorily challenged an African-American male and an African-American female from the potential jury panel. Shermekia Bush and Brian Burrell were challenged and excused by the court.
 

 The defense pointed out that because Burrell had not been asked any questions, there could be no cause for his release except race. The State was then asked to give its race-neutral reasons for the challenges to Bush and Burrell:
 

 To respond, your Honor, I’ll start with Mr. Burrell since he was last mentioned. That’s exactly the reason he was. We exercised the preempt is [sic] because through some reason he was never asked any questions. He never raised his hand in response to any questions. Um, and so I was just a little fearful. Didn’t really get an opportunity to speak with him. That’s simply the reason we filed the strike back on him. Not strike back. Peremptory challenge on him. And as to Shermekia Bush, she’s the cousin of-she did not name him by name-but of an individual who was recently convicted of vehicular homicide and murder. It has to be Jatazz Warren. I helped out with that trial for Jatazz Warren. I don’t care what the woman says she thinks he was wrongly accused of it. Um, and that’s the reason, certainly that’s a race neutral reason for her, for us exercising a peremptory challenge. There’s four black jurors left after the three causes. Two of which we |udidn’t’ [sic] challenge. Those are the reasons we challenged them.
 

 The defense responded that Bush stated that she could be impartial, and the state reiterated that it was a peremptory challenge. The Court ruled:
 

 I understand. The State has certainly presented racially neutral reasons for excluding Ms. Bush. And really even before you get to that test that part of the test it’s whether there’s been a systematic exclusion of a particular race. And the Batson challenge and the reverse Batson challenge. The State has ten additional peremptory challenges remaining. They chose not to strike Angelo Monk, Jacqueline Hamilton and also Tony Gibson. So at this point there’s no systematic exclusion of black juror members. There’s really no race neutral reasons at this point why Brian Burrell was not, uh, was stricken. But that really is not relevant at this point because there’s no systematic exclusion of black members of the jury. So the Court will note the objection but the Court will deny the Batson motion.
 

 The state then stated as another reason for challenging Burrell that he has a disturbing the peace and two counts of simple battery misdemeanors, which “obviously [sic] not felony convictions but they did play a part in our decision. Criminal history. Specifically the two simple batteries.”
 

 
 *1080
 
 The trial court’s final determination was that:
 

 Certainly they have good grounds to challenge Shermekia Bush. The only one questionable is Mr. Burrell but there’s no systematic exclusion at this point. Because there are, there are three black potential members of this jury who were not stricken by the State. Two that were. And although there were no peremptory challenges exercised for white members of this jury panel, there’s no systematic exclusion based on the fact that the State elected to strike the two that were stricken. So I’ll deny the motion.
 

 Applying the reasoning in
 
 State v. Draughn, supra,
 
 to the present case, the defendant has failed to show that the trial court erred in denying its
 
 Batson
 
 challenges. Under
 
 Draughn,
 
 the first question is whether the defense has made a
 
 prima fa,cie
 
 showing that the peremptory challenges hr,were based on race. After reviewing the record, it is presumed that the court believed the defendant had met that burden. The state was then required to present race-neutral reasons for the peremptory challenges. Under
 
 Draughn,
 
 the state’s reasons need not be persuasive, or even plausible, but simply race-neutral. Here, the state justified its challenge of Bush based on the recent prosecution of her cousin. The state also gave several reasons for challenging Burrell, including that he wasn’t questioned thoroughly, he did not raise his hand when questions were addressed to the entire panel, and his pri- or misdemeanor convictions. While the trial court may not have found the reasons for the challenge of Burrell persuasive or plausible, they were race-neutral. It was then the court’s option to determine whether the defendant had proven “purposeful discrimination.” Here, the trial court found that the defendant had not met that burden because three black members of the potential jury panel were not challenged.
 

 Based on the
 
 voir dire
 
 transcript and the transcript of the
 
 Batson
 
 discussion between the opposing parties and the trial court, the defendant has not shown that the trial court was clearly erroneous in denying its
 
 Batson
 
 challenge.
 

 This assignment is therefore without merit.
 

 Assignment of Error Number U: Expert Testimony
 

 In the fourth assignment of error, the defendant contends that the trial court erred in allowing Detective Mark Johnson to provide expert testimony that was “tantamount to an opinion that the defendant was guilty of the crime charged.”
 
 State v. Wheeler,
 
 416 So.2d 78 (La.1982). The defendant 11fiasserts that such testimony invaded the province of the jury and directly resulted in his conviction for attempted possession of marijuana with intent to distribute.
 

 Louisiana Code of Evidence Article states:
 

 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, expertise, training, or education, may testify thereto in the form of an opinion or otherwise.
 

 Moreover, Article 704 provides:
 

 Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. However, in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused.
 

 
 *1081
 
 Pursuant to this article, a trial judge may admit expert testimony which “embraces an ultimate issue to be decided by the trier of fact,” but the expert witness is not permitted to testify to the ultimate issue of a defendant’s guilt.
 
 State v. Irish,
 
 2000-2086 (La.1/15/02), 807 So.2d 208.
 

 This court held in
 
 State v. Daniels,
 
 614 So.2d 97 (La.App. 2d Cir.1993), that a police officer’s expert testimony that he had examined the contents of a pill bottle, estimated the value of cocaine, and determined that the amount was consistent with distribution was permissible since the officer did not say that either the defendant or a hypothetical person was guilty of distribution.
 

 In
 
 State v. Smith,
 
 2003-0917 (La.App. 1st Cir.12/31/03), 868 So.2d 794, the court determined that testimony by a detective, who was an expert in narcotics, that opined a certain amount of marijuana seized from the |17defendant was not for personal consumption, was deemed permissible in a prosecution for possession with intent. The court explained that the average individual would not have knowledge of the amount of narcotics normally used for personal consumption. Also, the detective did not express an opinion as to guilt or innocence.
 
 State v. Smith, supra.
 

 Louisiana jurisprudence has condemned the use of hypothetical questions that parallel the actual fact situation of the case. The prosecutor may not get the expert witness to give an opinion about whether the hypothetical person described “would be involved in the distribution of marijuana.”
 
 State v. Smith,
 
 2003-0917 (La.App. 1 Cir.12/31/03), 868 So.2d 794.
 

 In the present case, Detective Mark Johnson was accepted as an expert in the field of packaging and distribution of marijuana. He testified with regard to the marijuana and other items discovered at the defendant’s home:
 

 DETECTIVE JOHNSON: Specifically what jumps out at me right off the bat, is you’ve got here each one of these are a quarter pounder. Basically what’s referred to on the street as a QP of marijuana. These things are supposed to weigh approximately a hundred twelve (112) grams apiece. This here is one individually packaged deal. Ounce of marijuana. This should weigh somewhere in the neighborhood of twenty eight (28) grams or one ounce. That’s where we at. I see a set of digital scales here. Uh, a set of manual scales for otherwise commonly known when they’re not being used for illegal purposes these are postal scales if you will. But manual scales. And several baggies of individuals, what they would be referred to on the street as dime bags. A dime referring to Ten Dollars ($10.00). That’s how much these things would go for. And obviously a big bag to hold it all together.
 

 INSTATE: Now looking at the three baggies itself with the marijuana in it, what is important about that being in the quarter and the ounce size bags?
 

 DETECTIVE JOHNSON: This right here is an indicator that these things were packaged for individual sales. Whenever a person would come up they want to buy — they may not have but Ten Dollars ($10.00) on them. Well, you sell them Ten Dollars ($10.00). You don’t sell them something for Two Hundred Fifty Bucks ($250.00). You have individual packaging here for quick sales depending on what the drug user wants to use and what he wants to buy. He can go as little as Ten Bucks ($10.00) as much as up to whatever you can negotiate this for.
 

 
 *1082
 
 STATE: So the varying sizes of the packaging indicates distribution?
 

 DETECTIVE JOHNSON: Or possession with intent-Yes Ma’am.
 

 STATE: And what about those two packages that came to be the same weight. What does that signify to you?
 

 DETECTIVE JOHNSON: That he’s— whoever this person is has sat down and made a conscious to [sic] weigh up package so that way he’ll know whenever he’s making a sale that hey, I want a QP. He’s got this right here. If the guy only wants an ounce he’s got that already packaged ready to go. If the person only wants a little dime bag ready to go he’s got that. So these were packaged into whatever size the person that wants to buy so he can buy as little or as much as he wants to. In this.
 

 Detective Johnson then described the use of scales in distribution of marijuana. He believed all of this marijuana was not for personal use because no implement in which to smoke the marijuana was found with the drugs.
 

 The state then concluded its questioning with the following exchange:
 

 STATE: And is it your opinion from what you’ve seen from this evidence that the person in possession of that marijuana had the intent to distribute that marijuana?
 

 |19DEFENSE COUNSEL: I object to that question, your Honor. That goes to the province of the jury.
 

 STATE: Your Honor.
 

 BY THE COURT: Repeat the question.
 

 STATE: My question is is it your opinion from what you’ve seen today that the person in possession of this marijuana had-I’ll rephrase the question. Is it your opinion from what you’ve seen today that there, the way that that marijuana is packaged that there’s an intent to distribute?
 

 COURT: Overruled.
 

 DETECTIVE JOHNSON: Yes, Ma'am.
 

 In this case, Detective Johnson was merely giving his opinion that the quantity of drugs, their packaging, and the paraphernalia were consistent with distribution. He based his opinion upon his many years of experience and training. Knowledge of the amount of marijuana usually possessed for sale or distribution, as distinguished from amounts used or possessed for personal consumption, was not a fact within the knowledge of the average individual.
 
 State v. Smith,
 
 supra. Moreover, Detective Johnson never explicitly stated that the defendant was guilty of possession of marijuana with intent to distribute. This assignment has no merit.
 

 Assignment of Error Number 5: Excessive Sentence
 

 In the fifth and final assignment of error, the defendant asserts that the sentences imposed are excessive. More specifically, the defendant argues that the trial court erred in ordering that the attempted possession with intent sentence should be served without benefits, because La. R.S. 40:966 B(3) does not provide for imposition of sentence without benefits. Additionally, the defendant argues that the trial court failed to give adequate Lnconsideration to his lack of a significant criminal history, the effect of incarceration on his family, and his medical and educational history.
 

 La. C. Cr. P. art. 881.1(E) applies to defendant’s sentence, which provides in pertinent part:
 

 E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of exces-
 
 *1083
 
 siveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
 

 Inasmuch as the defendant did not file a La.C.Cr.P. art 881.1 motion to reconsider his sentence, we will limit our review to the bare claim that his sentence is constitutionally excessive.
 
 State v. Masters,
 
 37,-967 (La.App. 2d Cir.12/17/03), 862 So.2d 1121.
 

 A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this court will not set aside a sentence as excessive.
 
 State v. Williams,
 
 03-3514 (La.12/13/04), 893 So.2d 7;
 
 State v. McCall,
 
 37,442 (La.App. 2d Cir.8/20/03), 852 So.2d 1162,
 
 writ denied,
 
 04-0039 (La.12/17/04), 888 So.2d 858. On review, the appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion.
 
 Id.
 

 In reviewing claims of an excessive sentence, an appellate court uses a two-step process. First, the record must show, as it does here, that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the [^guidelines of the article.
 
 State v. Smith,
 
 433 So.2d 688 (La.1983);
 
 State v. Dunn,
 
 30,767 (La.App. 2d Cir.6/24/98), 715 So.2d 641.
 

 The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1.
 
 State v. Lanclos,
 
 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation.
 
 State v. Jones,
 
 398 So.2d 1049 (La.1981);
 
 State v. Haley,
 
 38,258 (La.App. 2d Cir.4/22/04), 873 So.2d 747,
 
 writ denied,
 
 2004-2606 (La.6/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing.
 
 State v. Shumaker,
 
 41,547 (La.App. 2d Cir.12/13/06), 945 So.2d 277,
 
 writ denied,
 
 2007-0144 (La.9/28/07), 964 So.2d 351.
 

 Second, the determination of whether the sentence imposed is too severe is contingent upon the circumstances of the case and the background of the defendant. A sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.
 
 State v. Smith,
 
 2001-2574 (La.1/14/03), 839 So.2d 1. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light ofj^the harm done to society, it shocks the sense of justice.
 
 State v. Bradford,
 
 29,519 (La.App. 2d Cir.4/2/97), 691 So.2d 864.
 

 The defendant was convicted of attempted sexual battery, which carried a possible sentence of 5 years; attempted possession of marijuana with intent to distribute, which carried a possible sentence of 15 years; and unauthorized entry of an inhabited dwelling, which carried a possible sentence of 6 years. The defendant was sentenced to 5 years for the attempted sexual battery conviction, 10 years for the attempted possession with intent conviction, and 3 years for the unauthorized en
 
 *1084
 
 try conviction. The defendant now argues that these sentences are excessive.
 

 The record shows that the trial court specifically considered aggravating and mitigating circumstances, thereby complying with La.C.Cr.P. art. 894.1, and tailored the sentence to the instant offense and this offender. The trial court relayed the facts of the case and the defendant’s criminal history. The trial court also addressed the defendant’s “social history,” including mentioning the defendant’s girlfriend, who already had a two-year-old daughter with the defendant and was pregnant, at the time of the sentencing, with his second child. The trial court stated that the defendant admitted daily use of marijuana and that he was on active probation at the time the instant offenses were committed. As a result, his probation was revoked and he was in the middle of serving a 3-year sentence. The defendant has not shown that the trial court failed to consider the Article 894.1 factors.
 

 leaThe record does not show that the defendant’s sentence is grossly out of proportion with the acts committed. With regard to the attempted sexual battery conviction, the defendant was sentenced to the maximum of 5 years at hard labor without benefit of probation, parole or suspension. The defendant was originally charged with sexual battery and faced a 10-year sentence, and although he was only convicted of attempted sexual battery, the defendant has not shown that this was a “purposeless and needless inflection of pain and suffering.” With regard to the attempted possession with intent to distribute conviction, the defendant faced a term of up to 15 years and was actually sentenced to 10 years at hard labor, the first 4 years without benefit, the remaining 6 years suspended, with 5 years supervised probation. This sentence is nowhere near the maximum that the defendant faced, and the defendant has, again, failed to show that this was a needless infliction of pain and suffering. Finally, for the unauthorized entry conviction, he was sentenced to 3 years at hard labor, when he faced 6. This sentence is half that to which the defendant was exposed and the defendant has failed to show that this was a needless infliction of pain and suffering.
 

 Further, it should be noted that these sentences are to be served concurrently, meaning the defendant’s total jail time is only 5 years.
 
 [2]
 
 The defendant’s exposure for all three crimes, if served consecutively, would have been 26 years. The defendant’s resulting sentence of 5 years does not show a needless infliction of pain and suffering.
 

 1This assignment is therefore without merit. However, the defendant is correct, and the state concedes, that the trial court erred in denying the defendant the benefit of parole for the attempted possession with intent to distribute conviction. For that reason, we amend the sentence to delete the prohibition of parole, but affirm the remainder of his sentence.
 

 CONCLUSION
 

 For the foregoing reasons, we affirm the defendant’s convictions and sentences, but amend the defendant’s sentence for attempted possession with intent to distribute to remove the prohibition of parole.
 

 AFFIRMED AS AMENDED.
 

 [1]
 

 . The victim’s initials are used in lieu of her name. La. R.S. 46:1844(W).
 

 [2]
 

 . These sentences are to be served consecutively to any other sentences. Because the defendant was imprisoned on a probation revocation, the sentences will be added to the end of the term he is currently serving.